Kinnear *v.* Langley, Executor.

4-7840                                    192 S. W. 2d 978

Opinion delivered March 11, 1946.

*Wootton, Land & Matthews,* for appellant.

*C. T. Cotham* and *Scott Wood,* for appellee.

McFaddin, J.   Section 14525 of Pope's Digest is sometimes referred to as the "pretermitted child" statute.   Appellant claimed to be the pretermitted child of Mrs. Helen Burdick, deceased, and, relying on that claim, filed suit in the Garland chancery court. From a decision

adverse to her claim, she brings this appeal. We will interchangeably refer to the appellant as Hazel Wade, Hazel Burdick, and Hazel Burdick Kinnear: the identity is the same.

Hazel Wade was born in April, 1892, in Labette county, Kansas, being a daughter of William Wade and Ida Wade. Mr. Wade worked for Mr. Burdick, and the families were friends. Mrs. Wade died in 1895, and the next day William Wade gave the three-year-old girl, Hazel Wade, to the Burdicks, who had no children of their own. They gave her the name of Hazel Burdick, and she was thereafter known by that name. The Burdicks delayed the adoption of Hazel Burdick until May, 1907, so that she would be old enough to comprehend it. Thus, when Hazel Burdick was 15 years of age, in May, 1907, George H. Burdick and his wife, Mrs. Helen Burdick, secured a court order in the county court of Labette county, Kansas, whereby each and both adopted Hazel Burdick as their child. The legality of that adoption was in dispute in the chancery court in the trial from which comes this appeal; but that issue will not be considered in the view we take of the case. We assume that Hazel Burdick was duly and legally adopted, and that the identity of Hazel Burdick and the appellant in this court is thoroughly established. There is no claim in this case that an adopted child is not entitled to the benefits of § 14525, Pope's Digest; so that question is not before us.

After the adoption, Hazel Burdick continued to live with her adoptive parents until she married Roy Whitsett in July, 1911. Even thereafter George Burdick continued to give her a monthly allowance for a few years. The Whitsett marriage proved an unhappy one and resulted in divorce; and in June, 1920, Hazel Burdick left Kansas and went to Oregon, where she has continued to reside, except for a few years' residence in California. In Oregon, she married Mr. Kinnear and has a family, and has been very happy. After leaving Kansas in 1920, Hazel Burdick lost all contact with the Burdicks. She is not positive that she ever wrote them from Oregon; and if

she did, she only wrote one letter and received no answer. She said that her marriage in Kansas had failed, and her experiences around Parsons and Oswego had been very unhappy, and: ". . . when I went west I decided to put everything in the past behind me and start out again and forget it." Shortly after Hazel Burdick went to Oregon her adoptive parents, George and Helen Burdick, moved from Kansas to Hot Springs, Arkansas, where they had visited when Hazel was still in Kansas. George and Helen Burdick continued to reside in Hot Springs for the entire remaining life of each. George Burdick died in 1937 at about 76 years of age; Helen Burdick died in May, 1941, being over 70 years of age. That the Burdicks thought Hazel was dead is shown by a letter written in 1928 by Mrs. Burdick to a cousin, which letter reads in part: "I have not heard from Hazel for years. She must be surely dead or we would hear of her some time." In 1943, Hazel Burdick Kinnear contacted some people in Oswego, Kansas, to see if anyone could help her secure a needed birth certificate. In this way, she learned of the death of George and Helen Burdick; and then on June 23, 1943, filed this suit to obtain the entire estate of Mrs. Helen Burdick on the claim that Hazel Burdick was a pretermitted heir. Appellant's claim as a beneficiary in the George Burdick estate is not before us. This appeal involves the claim of Hazel Burdick Kinnear to the entire estate of Mrs. Helen Burdick, but for reasons that presently appear, it is necessary that we mention a portion of the will of George H. Burdick. As previously stated, he died in 1937. His last will and testament dated December 28, 1931, was duly probated in Garland county, Arkansas. Hazel Burdick was mentioned in two places in his will. Item 3 said: "I give and bequeath unto my adopted daughter, Hazel Burdick, . . . the sum of $1.00." Item 5 of the will set up a trust estate, naming J. O. Langley as trustee and Mrs. Helen Burdick as the sole life beneficiary of the trust; and provided, so far as Hazel Burdick was concerned, that after the death of Mrs. Helen Burdick: "(d) The trustee shall pay unto my adopted daughter, Hazel Burdick, the sum of $1,000,

provided my said adopted daughter be living, and if she be deceased, then said payment shall be made unto her issue, if any, and if none, said legacy shall lapse.'' J. O. Langley was sole executor of the will and sole trustee of the estate of George Burdick. The administration of the estate was closed; and Langley continued to act as trustee. This legacy for Hazel Burdick Kinnear appears to have been paid into court in other proceedings.

So much for the will of George Burdick. Mrs. Helen Burdick made her will on November 18, 1938; and in it she did not mention Hazel Burdick by name. The only possible reference to Hazel Burdick is in section 9 of the will, which section reads: ''9. All other property of which I may die seized, either real or personal, shall revert back to the estate of my deceased husband, George H. Burdick, and shall be distributed as provided in his last will and testament.'' Mrs. Helen Burdick executed two codicils to her will: the first being dated January 30, 1939; and the second, October 21, 1940. The first codicil is immaterial to a disposition of this case. The second codicil recited: ''I hereby revoke section 9 of my last will and testament and substitute the following: . . . the balance of my estate I bequeath unto J. O. Langley . . .'' As previously stated, Mrs. Helen Burdick died in May, 1941, at Hot Springs. Her will and the two codicils were duly probated, and the estate administered and closed. Then the appellant, Hazel Burdick Kinnear, filed this suit on June 23, 1943, claiming to be the pretermitted child of Mrs. Helen Burdick, and therefore entitled to her estate.

Many interesting questions are presented in the excellent briefs filed by learned counsel on each side; but we find it necessary to discuss only three questions, to-wit: I. Did Mrs. Burdick's will incorporate her husband's will into her own will by such reference? II. Did the reference in section 9 of Mrs. Burdick's will to the will of her husband sufficiently mention Hazel Burdick so as to prevent her from claiming the rights of a pretermitted child under § 14525, Pope's Digest? III. Did the

revocation of section 9 of Mrs. Burdick's will by the second codicil constitute an omission to name Hazel Burdick, so as to give her the status of a pretermitted child?

We proceed to decide these questions.

I. *Incorporation by Reference.* In section 9 of her will, Mrs. Burdick made reference to the will of Mr. Burdick, in that she said: "9. All other property of which I may die seized, either real or personal, shall revert back to the estate of my deceased husband, George H. Burdick, and shall be distributed as provided in his last will and testament." The question is whether that reference by Mrs. Burdick was sufficient to incorporate (*i. e.,* include) Mr. Burdick's will in her will.

The general rule, as stated in 28 R. C. L. 112, is as follows: "Incorporation of other papers by reference thereto.—If a will, duly executed and witnessed according to statutory requirements, incorporates into itself by reference any document or paper not so executed and witnessed, whether such paper referred to is in the form of a will, codicil, deed, or a mere list or schedule, or other written paper or document, such paper if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to, takes effect as a part of the will, and is entitled to probate as such." The same general rule is stated in somewhat similar language in 68 C. J. 640.

Mrs. Burdick's will was dated November 18, 1938. At that time Mr. Burdick's will was already duly probated and of record in Garland county. So, Mr. Burdick's will was (1) in existence and (2) duly identified in Mrs. Burdick's will; and the two requirements of the rule, stated in R. C. L. as above, have been met. The rule of incorporation by reference is supported by the great weight of authority. In 37 A. L. R. 1476, there is an annotation entitled "Incorporation into will of provisions of the will of another person by reference thereto." This annotation follows the reported case of *Bemis* v. *Fletcher,* decided by the Supreme Judicial Court of Massachusetts

in 1925, 251 Mass. 178, 146 N. E. 277, 37 A. L. R. 1471. In that case Mrs. Estabrook stated in her will that the residue of her property should go to those persons named in her husband's will, and the question for decision by the court was whether her husband's will was incorporated in her will by such reference. The Massachusetts court said: ''The will of Mr. Estabrook was in existence in 1910 when the testatrix' will was executed. His will was sufficiently identified, and it could be incorporated into her will. 'A testator may refer expressly to a paper already executed, and describe it with such particularity as to incorporate it virtually into the will.' '' In 144 A. L. R. 714 there is an annotation on the subject, ''Incorporation of extrinsic writings in will by reference.''

In *Gerrish* v. *Gerrish*, 8 Ore. 351, 34 Am. Rep. 585, Mrs. Gerrish stated in her will that her property should be distributed ''in accordance with the provisions made in the last will of my said husband concerning the same.'' On the question of whether this quoted reference incorporated her husband's will into Mrs. Gerrish's will, the Oregon Supreme Court said: ''. . . where a will, otherwise properly executed, refers to another paper already written, and so describes it as to leave no doubt as to its identity, such paper, it seems, makes part of the will, although the paper be not subscribed or even attached. In this case there can be no doubt as to the identity of the instrument referred to. The husband of the testatrix had been dead and his will admitted to probate several years before her will was written.'' This Oregon case was cited with approval by the Arkansas Supreme Court in *Brown* v. *Nelms*, 86 Ark. 368, 112 S. W. 373, and will be further discussed in part II of this opinion.

We may summarize the authorities and texts thus far discussed by the statement that the great weight of authority is to the effect that a will may, by definite reference, incorporate into its four corners a document already in existence and sufficiently identified.

884

The question remains, whether this weight of authority is the rule in Arkansas. The appellant cites and relies on *O'Leary* v. *Lane,* 149 Ark. 393, 232 S. W. 432, as holding *against* incorporation by reference. Appellees cite and rely on *Rogers* v. *Agricola,* 176 Ark. 287, 3 S. W. 2d 26, as holding *for* incorporation by reference. We are thus brought to a consideration of our own cases.

In *O'Leary* v. *Lane, supra,* the will under consideration stated: "It is my will and desire that the deeds heretofore by me executed to the heirs of my estate, deeding to them real property that I desire each to have at my death, which are now in my safety deposit box in the Farmers' & Merchants' Bank at Des Arc, Arkansas, be by my executor and executrix, hereinafter named, delivered to said heirs mentioned in said deeds, which property I give and bequeath to each of said heirs as conveyed in said deeds." The contest arose over whether the deeds were incorporated into the will by the quoted references, and this court said: "Independent instruments, though testamentary in character, cannot be incorporated in wills as a part thereof by reference only in this State, for the statutes here require that the entire will shall be authenticated in the manner specified in the statutes. In the case of *Bryan* v. *Bigelow,* 77 Conn. 604, 60 Atl. 266, 107 Am. St. Rep. 64, a sealed letter, testamentary in character, found in the same receptacle with the will, referred to in the will and otherwise identified, was treated as ineffective as a part of the will, not being executed in the manner required for the execution of wills. Under the rule thus announced, the separate deeds referred to in the will now under construction are ineffective as testamentary dispositions of lands described therein—not being testamentary in character and authenticated as required by the laws of this state."

Whether the above quoted language was necessary to the conclusion reached in the case is a question we need not decide, for that quoted language was overruled by the holding of this court in *Rogers* v. *Agricola, supra,* where we held that a holographic codicil was sufficient

to incorporate by reference a then existing typewritten document, which latter was ineffectual as a will because not legally attested. There is no escape from the conclusion that the holding in *Rogers* v. *Agricola* constituted an adherence of this court to the weight of authority allowing instruments definitely identified and then in existence to be incorporated into a will by reference. In *Rogers* v. *Agricola* we said: "We are of the opinion therefore that the two instruments constituted the will of Carl Rogers, . . ."

We, therefore, conclude that Mrs. Burdick's will, by the reference in section 9 thereof, incorporated into it the will of George H. Burdick as effectively as if said will of George Burdick had been written out in full in Mrs. Burdick's will.

II. *Did the Reference in Section 9 of Mrs. Burdick's Will to the Will of Her Husband Sufficiently Mention Hazel Burdick So as to Prevent Her From Claiming the Rights of a Pretermitted Child Under § 14525 of Pope's Digest?* This section of our digest was § 12 of chapter 157 of the Revised Statutes of 1837, and has remained without legislative change. The part essential to consideration here reads: "When any person shall make his last will and testament, and omit to mention the name of a child, if living, or the legal representatives of such child born and living at the time of the execution of such will, every such person, so far as regards such child, shall be deemed to have died intestate, and such child shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator as if he had died intestate; . . ."

In the University of Arkansas Bulletin, Vol. 34, No. 4 (Law School Bulletin, Vol. 8, No. 2) under date of May 15, 1940, there is an article by Prof. Edward B. Meriwether, entitled, "Pretermitted Child Statutes," which reviews the Arkansas cases on this statute, as well as on § 14524, Pope's Digest. In Columbia Law Review, Vol. 29, p. 748, there is an analysis of the statutes of various states concerning pretermitted children.

The case of *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373, was decided by this court in 1908, and has become a landmark in the application of our pretermitted child statute. That case clearly holds that the testator need not name each child individually, but he may refer to all of his children as a class. In the reported case, the testator had four children. He did not name them individually: the will merely provided, ''I give my wife one-half of my property, and one-half to my children.'' This provision was held to be a substantial compliance with our pretermitted child statute. Mr. Justice McCULLOCH, speaking for this court, said (l. c. 385): ''We think it is manifest that what was intended by the statute was to declare intestacy as to children of a testator, and thus provide compulsory provisions for them, unless the testator expresses a contrary intention in the will toward the children. Such an intention may be expressed by the testator in his will by providing for them as a class without naming them separately, or by naming them without providing for them. Either method is equivalent to the other, and either the one or the other clearly excludes any intention on the part of the testator to omit his children from the testament. It would, we think, be disregarding entirely the purpose of the statute, and would be putting form over substance, to say that the names of children must be individually mentioned in a will which provides substantially for each and all of them.''

We expressly follow *Brown* v. *Nelms,* and give the above quotation to show the reason that this court assigned for its holding on the statute. See, also, *Culp* v. *Culp,* 206 Ark. 875, 178 S. W. 2d 52, and authorities there cited; and see, also, 26 C. J. S. 1050. There is nothing in *Yeates* v. *Yeates,* 179 Ark. 543, 16 S. W. 2d 996, 65 A. L. R. 466, in conflict with the holding in the present case. The Yeates case was peculiar in its facts, but clearly recognized the general principles concerning pretermitted children.

In *Brown* v. *Nelms,* this court cited *Gerrish* v. *Gerrish, supra,* as follows (l. c. 388): ''The Supreme Court

of Oregon in *Gerrish* v. *Gerrish,* 8 Ore. 351, 34 Am. Rep. 585, construing a statute of the State which was copied from the Missouri statute quoted herein, followed the construction laid down by the Missouri court, and held that the mention in a will of children as a class was sufficient naming of them within the meaning of the statute.'' The Gerrish case has been previously mentioned in this present opinion, and is ''on all fours'' with the facts in the case at bar. The claim was made in the Oregon case that some children were pretermitted because not individually named in the will of Mrs. Gerrish. But it was shown that Mrs. Gerrish in her will had adopted by reference the will of her husband, Mr. Gerrish, and that in his will he had named all of the children of Mrs. Gerrish. Therefore, the Oregon court held that the children of Mrs. Gerrish were not pretermitted heirs.

When we held, as we did, in the first section of this opinion, that the reference by Mrs. Burdick in her will to the will of Mr. Burdick constituted an incorporation of his will into her will by such reference with the same force and effect as if written in her will, and when it was shown that Mr. Burdick named Hazel Burdick in his will, then it would seem reasonably clear that Hazel Burdick was not pretermitted from Mrs. Burdick's will. But that conclusion is strengthened and made positive by the holding in the Gerrish case, which was cited by this court as previously mentioned.

We, therefore, hold that Mrs. Hazel Burdick Kinnear cannot claim to have been pretermitted from the will of her adoptive mother, Mrs. Helen Burdick, since the latter adopted into her own will by reference the will of Mr. Burdick, and since Mr. Burdick's will named Hazel Burdick in at least two places.

III. *Did the Revocation of Section 9 of Mrs. Burdick's Will by the Second Codicil Constitute an Omission to Name Hazel Burdick So as to Give Her the Status of a Pretermitted Child?* It will be recalled that in the will of Mrs. Burdick (dated November 18, 1938) the only reference to Hazel Burdick was by section 9 thereof, which

section incorporated therein by reference the will of Mr. Burdick. The second codicil of Mrs. Burdick's will was dated October 21, 1940, and in that codicil Mrs. Burdick specifically revoked section 9 of her will. Appellant claims that the effect of this second codicil was to expunge section 9 from Mrs. Burdick's will, thereby omitting the only reference to Hazel Burdick, and leaving her pretermitted. The answer to this contention necessitates a discussion of the nature and effect of a codicil.

Some of our cases involving codicils are: *Rogers* v. *Agricola,* 176 Ark. 287, 3 S. W. 2d 26; *Little Rock* v. *Lenon,* 186 Ark. 460, 54 S. W. 2d 287; *Driver* v. *Driver,* 187 Ark. 875, 63 S. W. 2d 274; *Gibbons* v. *Ward,* 115 Ark. 184, 171 S. W. 90; *United States of America* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807. General statements on the definition and effect of codicils may be found in: 68 C. J., pp. 412, 868, and 886; 28 R. C. L. 197; *Page on Wills* (Lifetime Ed.), §§ 439, 466, and 528; *Schouler on Wills, Executors and Administrators* (Sixth Ed.), §§ 8, 9, 630, 753, and 904.

A codicil is not an entirely new will. A codicil is, rather, a postscript to the will showing something added by the testator to the original document. Just as a postscript to a letter may show a new idea of the writer or a change, or amendment to a thought, expressed in the letter: so a codicil may express a new bequest or a change or modification of a bequest in the will. Just as the postscript does not physically or literally erase or expunge whatever it affects in the letter: so, also, the codicil does not physically or literally erase or obliterate whatever it affects or changes in the original will. The will is probated along with the codicil; together they constitute the "last will and testament" of the testator or testatrix.

These statements are elementary to any practitioner; but sometimes the simple and elementary truths are overlooked, with resultant confusion and misunderstanding. A section of a will does not literally and physically cease to exist merely because the section is revoked in the codicil. The revoked section continues to be in ac-

tual existence, but is given no effect in construing or interpreting the will, since the codicil revokes the section. In some of the cases construing and interpreting wills, there may be found statements to the effect that, when a section in a will has been revoked by a codicil, the testament is construed as though the revoked section did not exist. Such statements are true in construing and interpreting wills and testaments, but these statements do not mean that the revoked section of the will does not exist in fact. The revoked section is not obliterated: it is merely rendered nugatory.

Applying these elementary principles to the case at bar, the result is this: Mrs. Burdick named Hazel Burdick (by reference) in section 9 of the will; and that fact prevents Hazel Burdick from being a pretermitted child. By the second codicil, Mrs. Burdick revoked section 9 of her will. The effect of such revocation is to leave Hazel Burdick without a bequest. But the effect is not to erase or obliterate Hazel Burdick's name from the will. Section 9 remains in the will, although, by the codicil, it is to be given no effect. The situation here is the same as if Mrs. Burdick had said, ''I name my adopted daughter, Hazel Burdick, but I leave her nothing.'' In such a case, Hazel Burdick is mentioned and therefore is not pretermitted. *Culp* v. *Culp, supra,* bears on this point. In *Phillips* v. *Phillips,* 193 Wash. 194, 74 Pac. 2d 1015 (decided by the Supreme Court of the State of Washington in 1938), the testatrix stated in her will: ''I have in mind my five children,'' and she named each of the five: ''and make no provision as to them, knowing that my said husband, who is their father, will deal justly with them.'' It was argued that the children were pretermitted, because they received nothing, but the Supreme Court of Washington (in which state the pretermitted child statute is similar to ours) held that the children were not pretermitted.

*Faucher* v. *Bouchard,* 47 R. I. 150, 131 Atl. 556, was decided by the Supreme Court of Rhode Island in 1926. In that case the testator made a specific bequest of a cer-

tain house and lot to the heirs of a deceased son. That was the only mention of the heirs of such deceased son in the will. After the making of the will the testator disposed of the specific house and lot, so that at the time the will was probated there was no property to go to the heirs of the deceased son. These grandchildren claimed that they were pretermitted under the Rhode Island statute similar to our statute. The Rhode Island court held against such contention of the grandchildren, stating that the statute did not require the testator to leave any property to such grandchildren, but merely required that they not be omitted. The court said, of the grandchildren: "The latter received nothing, not because of an omission in the will, but by a failure of the devise due to the subsequent act of the testator. The only conclusion from the facts is, that testator intended that the grandchildren mentioned in his will should take nothing under the will." See, also, *In re* Fanning's Estate. 8 Calif. 2d 229, 64 Pac. 2d 951.

Such is the case here. Mrs. Hazel Burdick Kinnear was not pretermitted, because she was named by reference in the will. She takes nothing under the will of Mrs. Helen Burdick because the bequest to Hazel Burdick was revoked by the codicil. The decree of the chancery court is in all things affirmed.