YEATES v. YEATES.

Opinion delivered May 13, 1929.

*King & Whatley* and *Henry Stevens,* for appellant.
*McKay & Smith,* for appellee.

MEHAFFY, J.   William Baker Yeates died about the 14th day of February, 1922, in Lafayette County, Arkansas, leaving Mrs. S. A. Yeates, his widow, E. C. Yeates, Ella Roack, Emma Todhunter, Effie Yeates McClellan, Beatrice Yeates Martin, Nellie Yeates Barney, William

Clinton Yeates and Clifton Yeates as his children and only heirs. He owned, at the time of his death, certain real estate, described in plaintiff's complaint.

On the 17th day of January, 1922, William B. Yeates executed the following instrument as his will:

"Last Will and Testament of William Baker Yeates.

"Taylor, Arkansas, January 17, 1922.

"Be it known by these presents, that I, William Baker Yeates, being of sound mind, do execute this instrument of writing as my last will and testament as to the distribution of my property after death, fully realizing that we have to meet it sooner or later, and being in full possession of all my faculties, and as before states of sound mind, do choose this an opportune time, also being under obligation to some of my children for care and attention during sickness I do feel a sense of obligation to them for their favors, and not to run any risk as to others contesting their rights after my decease.

"List of William Baker Yeates' real estate.

"List of property to be distributed after my death.

"Eighty acres in Lafayette County, Arkansas; 80 acres in Columbia County, Arkansas; about 13 acres in Lafayette County, Arkansas; about 3½ acres in Columbia County, being in town of Taylor, Arkansas; the numbers of said lands will be expressed when this instrument will be rewrote in legal form after deducting from these lands and other perishable property, constituting the real and actual expenses will be bequeathed to W. C. or more familiar name of Boss Yeates (William Clinton Yeates) and after bequeathing $1 to each of the other contestants' just claims as being my children, all other contestants being debarred.

"I, William Baker Yeates, do name and call as being citizens of Lafayette and Columbia counties, and having known me and the property in question all their lives. Names of witnesses as named by myself and written by myself:

"William Baker Yeates, donor.

"Monroe Glasgow, J. P.

"Wash McDonald, Jim Fish, Willie J. Collier. Names of witnesses in their own hand: Wash McDonald, J. F. Fish, W. J. Collier.

"Witness and subscribed before me this 17th day of January, 1922.

"Monroe Glasgow, J. P."

This will was probated in March, 1923, the probate court of Lafayette County ordering and adjudging that the above will was the last will and testament of William Baker Yeates, and that it is established and probated, and the clerk ordered to record same in record of wills in Lafayette County, Arkansas.

On the 26th day of March, 1925, the plaintiffs filed their complaint in the Columbia Chancery Court against William C. Yeates, alleging that they, together with the defendant, are the owners as tenants in common of the lands described in the will and in plaintiff's complaint. They alleged that William Baker Yeates died about the 14th day of February, 1922, leaving surviving him the plaintiffs and the defendant, who are the only heirs at law of William Baker Yeates, deceased. The plaintiffs in the lower court are appellees here, and the defendant in the lower court is the appellant.

William Clinton Yeates, the defendant, filed answer, denying the material allegations in plaintiff's complaint, and alleged that he was the owner of the property, both by gift and under the will of his father. He further states that the will was probated, and that an appeal was taken by the plaintiffs to the circuit court, and that the findings of the probate court were approved, and that no appeal was ever taken from the circuit court. All of the parties to this suit were parties to the suit in the circuit court contesting the will.

There were numbers of witnesses examined, and the testimony was somewhat conflicting, several witnesses testifying, in substance, that William Clinton Yeates did not look after his father and care for him in his sickness; that he lived separate from him, and that some of

the other children contributed as much  or more than William Clinton Yeates to the father during his sickness. And the court found that the will of William Baker Yeates, introduced in evidence, was ineffective to transmit the title to the property described to the defendant as against the plaintiffs, and also found against the appellant for six-sevenths of the value of the timber which he had cut from the land.  The court found that the plaintiffs and the defendant each was entitled to one-seventh undivided interest in the lands described in the complaint, subject to the dower interest of Mrs. Sarah Alice Yeates.

The only question before this court is whether the will which was admitted to probate is effective to transmit the title to the real estate described to the appellant. That is, whether it is effective to give the appellant all the real estate described as against the other children of the testator.

Section 10507 of Crawford & Moses' Digest is as follows:

''When any person shall make his last will and testament, and omit to mention the name of a child, if living, or the legal representatives of such child born and living at the time of the execution of such will, every such person, so far as regards such child, shall be deemed to have died intestate, and such child shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator, as if he had died intestate; and such child shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares, and the court exercising probate jurisdiction shall have power to decree a distribution of such estate according to the provisions of this and the preceding sections.''

''The omission of the name of a child does not make the will void, but the child whose name is omitted may recover his share of the estate that he would have been entitled to if the testator had died intestate.''  *Trotter*

v. *Trotter,* 31 Ark. 145; *Bloom* v. *Strauss,* 70 Ark. 483, 69 S. W. 548; 72 S. W. 563.

This court, in construing this statute, said:

"We think it is manifest that what was intended by the statute was to declare intestacy as to children of a testator, and thus provide compulsory provisions for them, unless the testator expresses a contrary intention in the will toward the children. Such an intention may be expressed by the testator in his will by providing for them as a class, without naming them separately, or by naming them without providing for them. Either method is equivalent to the other, and either the one or the other clearly excludes any intention on the part of the testator to omit his children from the testament. It would, we think, be disregarding entirely the purpose of the statute, and would be putting form over substance, to say that the names of children must be individually mentioned in a will which provides substantially for each and all of them." *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373.

Is the intention of the testator expressed in this will by providing for his children as a class or by naming them without providing for them? It will be seen that this court has said that either method satisfies the requirement of the statute. Of course it will not be contended that any intention was manifested by naming the children. They are not named in the will. Then the only question to be determined is whether the intention of the testator was expressed by providing for them as a class. It was evidently the intention of the testator to have the will rewritten, as he said, in legal form, but the fact that he did not do so is immaterial, because the will has already been probated in the form in which it was originally written by Dr. Yeates. He states that he owns 80 acres of land in Lafayette County and 80 in Columbia, and also about 13 acres in Lafayette and about 3½ in Columbia, and states that the numbers of said lands will be expressed when the instrument is rewritten in legal form. Immediately following this is the state-

ment in the will: "After deducting from these lands and other perishable property, constituting the real and actual expenses will be bequeathed to W. C. or more familiar name of Boss Yeates (William Clinton Yeates) and after bequeathing $1 to each of the other contestants' just claims as being my children, all other contestants being debarred."

We do not think that it can be said that the testator, when he used the expression, "to each of the other contestants," meant all of his other children, or amounted to designating them as a class. It is impossible to tell from the will whether he meant all his children to have $1 apiece or whether he is referring to his children when he says they are debarred. He uses the word "contestants" and not the word "children." It is true he says "that each of the other contestants' just claims as being my children," but this is not sufficient to show that he had in mind all of his children. In the first part of the will he also says: "Being under obligation to some of my children for care and attention during sickness, I do feel a sense of obligation to them for their favors, and not to run any risk as to other contesting their rights after my decease." This makes it perfectly plain that he had in mind more than one child that he felt under obligations to, because he says "some of my children," and put it on the ground that they had cared for him and attended him during his sickness, and that he feels a sense of obligation to them. If he had meant simply one of them he would have said "to one of my children," or to William Clinton Yeates, if he was the one he intended to provide for. But, when it is perfectly plain that he felt under obligation to some of his children, and that means more than one, then, in using the word "contestants" he cannot have meant all of his children as contestants.

"Some means two or more." *Hurn* v. *Olmstead,* 105 N. Y. Sup. 1091. "Some child" would mean one child, but "some children" means more than one.

The principal or fundamental rule in construing wills is to ascertain the intent of the testator and give it effect, unless the testator attempts to secure a purpose or make a disposition contrary to some rule of law or public policy. The rules of construction are designed to ascertain and give effect to the intention of the testator. We think it practically impossible to tell what was the intention of the testator from this will, and if a testator attempts to effect that which the law forbids, his will must yield to the rules of law, no matter what his intention may have been, because the law will not permit the intention of the testator to be accomplished if he undertakes to do a thing which the law forbids. 28 R. C. L. 211 *et seq.*

It has been repeatedly held that, in construing wills, the intention of the testator is to be collected from the words of the will itself, as applied to the subject-matter, and read in the light of surrounding circumstances. And the intention mentioned is the intention expressed by the language of the will, and not necessarily the intention the testator had in mind. In other words, we get the intention by the language used, and there is no language used in this will that can be construed to mean a designation of his children as a class. When you take the whole will, it is perfectly plain that he felt under obligations to more than one of his children, and intended to provide for them because they had attended him in his sickness and cared for him. Not only is this manifest by the language used in the will itself, but the testimony shows that his children other than William Clinton Yeates had attended him in his sickness and helped him. Again, we think it clear from the language used in the will that he intended that his property after his death should be distributed. One sentence in the will is: "List of property to be distributed after my death."

This court has said: "The rule and the reason for it is stated by Mr. Jarman as follows: 'The most unbounded indulgence has been shown to the ignorance, un-

skillfulness and negligence of testators; no degree of technical informality, or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together; but if, after every endeavor, he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence. Conjecture is not permitted to supply what the testator has failed to indicate; for, as the law has provided a definite successor in the absence of disposition, it would be unjust to allow the right of this ascertained object to be suspended by the claim of any one not pointed out by the testator with equal distinctness. The principle of construction here referred to has found expression in the familiar phrase, that the heir is not to be disinherited unless by express words or necessary implication." *Cook* v. *Worthington*, 116 Ark. 328, 173 S. W. 195.

The statute above quoted expressly provides that, when a person makes a will and omits to mention the name of a child, every such person, as regards such child, will be deemed to have died intestate, and such child will be entitled to such portion, etc. And if a person die intestate, children inherit equally. Section 3471, Crawford & Moses' Digest. They inherit the property, however, subject to the payment of deceased's debts and subject to the widow's dower.

A person can dispose of his property by will to persons other than his children or relatives. He may disinherit all of his children, but, in order to do so under our statute, he must name the children, and, independent of the statute, it must be clear from his will that he intended to disinherit them. Children and those who are

entitled to inherit will not be deprived of this right by conjecture or unless it is the manifest intention of the testator to disinherit them.

"The heir will not be disinherited unless it be done by express terms of the will or by necessary implication; and the heir being favored in law, there should be no strained construction to work a disherison when the words of the will are ambiguous." *Baer* v. *Forbes,* 48 W. Va. 208, 36 S. E. 364.

Dr. Yeates not only did not mention his children so as to deprive them of any inheritance, but his wife was not mentioned in his will. Of course he could not have deprived her of her dower anyway; whether he had her in mind when he was talking about contestants, or had some of his children in mind instead of her, it is impossible to tell from the will. The will is so ambiguous that it is impossible to tell the number of children that he intended to provide for.

"Where any ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will; hence such a construction should be given the will as favors the heirs at law, or next of kin, in preference to disinheritance, or to strangers, or persons not so closely related to the testator, and the heirs at law will not be disinherited by mere conjecture, but only by express words in the will, or by necessary implication arising from them." 40 Cyc. 1412.

It is again said: "Where the testator's intention, as expressed in his will, is ambiguous or obscure, such a construction should be adopted, if possible, as will dispose of his property in a just, natural or reasonable manner, such as by an equal. distribution among his children or beneficiaries, where that is his manifest purpose." 40 Cyc. 1410.

Some of the witnesses testified that Dr. Yeates was a dope fiend, and this may account not only for his failure

to mention his wife and his children, but also for the ambiguous manner in which the will was written. At any rate, we think the will so ambiguous that it is impossible to say that he complied with the statute by naming his children, either as a class or individually, and that the will should therefore be construed so as to permit all the children to share equally in his property.

The decree of the chancellor is therefore affirmed.